## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZACHARY FRIDLINE, on behalf of himself and others similarly situated, | : <br> : <br> : CIVIL ACTION FILE NO. 4:23-CV-1194 <br> : |
| Plaintiff, | : <br> : |
| v. | : <br> : |
| INTEGRITY VEHICLE GROUP, INC. and NATCAP, INC. D/B/A VANGUARD VEHICLE ARMOR | : **COMPLAINT – CLASS ACTION** <br> : <br> : <br> : **JURY TRIAL DEMANDED** |
| Defendants. | : |

Plaintiff Zachary Fridline ("Plaintiff") (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

### NATURE OF ACTION

1. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. However, the TCPA doesn't only restrict robocalls.

3. Indeed, the Fourth Circuit has recognized that "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

4. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id...*This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his

own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

5. This case involves a campaign by Natcap, Inc. d/b/a Vanguard Vehicle Armor, a telemarketer retained by Integrity Vehicle Group, Inc. ("Integrity") to market Integrity's services through the use of pre-recorded telemarketing calls and to numbers on the National Do Not Call Registry in plain violation of the TCPA.

6. Because these calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls.

7. A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## PARTIES

8. Plaintiff Zachary Fridline is a resident of this District.

9. Defendant Integrity Vehicle Group, Inc. is a California corporation.

10. Defendant Natcap, Inc. d/b/a Vanguard Vehicle Armor is a California corporation.

## JURISDICTION AND VENUE

11. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq.*

12. This Court has jurisdiction over the Defendants because they either made calls into this District or directed others to do.

13. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because as calls were made or organized from this District.

## BACKGROUND

Calls Made Using a Pre-Recorded Message

14. The TCPA regulates, among other things, the use of a pre-recorded message to make calls or send pre-recorded calls. *See* 47 U.S.C. § 227, *et seq*.; *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

15. Specifically, the TCPA prohibits the use of a pre-recorded message to a wireless number in the absence of an emergency or the prior express written consent of the called party. *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1831 (F.C.C. 2012).

16. "[T]elemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12).

17. "[P]rior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the

signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

The National Do Not Call Registry

18. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

19. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

20. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## FACTUAL ALLEGATIONS

21. Defendants are a "person" as the term is defined by 47 U.S.C. § 153(39).

22. At no point has the Plaintiff sought out or solicited information regarding Defendants' services prior to receiving the pre-recorded call at issue.

Call to Plaintiff

23. Mr. Fridline's cellular telephone number is (570)-XXX-1007.

24. Mr. Fridline does not have a traditional landline phone and uses that number for personal purposes.

25. That number is not associated with a business.

26. Fridline has no prior relationship with the Defendants and did not consent to receive calls from them.

27. Despite that, Mr. Fridline received a pre-recorded telemarketing call from Vanguard calling on behalf of Integrity on March 30 and May 10, 2023.

28. The calls played a short pre-recorded message at the beginning of the call that said "please hold while we connect your call."

29. The pre-recorded message did not identify the caller.

30. The call was clearly pre-recorded because (a) there was a pause before the recording played and the robot started speaking (b) the robot had a generic monotone voice.

31. Vanguard used this pre-recorded message because it sent more calls than it had available agents for.

32. The Plaintiff also received calls from Vanguard on behalf of Integrity in September of 2021, December of 2022 and May 8, 2023.

33. During each call, automobile warranty services were solicited.

34. The warranty would, in exchange for a fee, purportedly provide coverage if there was an incident the call recipient's vehicle.

35. On all of the calls, Integrity Vehicle was identified as the entity that would be providing the administrator services.

36. On at least two of the calls, a sample contract for Integrity was sent by Vanguard to the Plaintiff.

37. A copy of that Contract is attached as Exhibit 1.

38. Following the September 2021 call, the Plaintiff wrote a letter to Vanguard to stop the calling conduct.

39. That letter was not responded to and the calls continued.

40. Indeed, on multiple calls that the Plaintiff received he explicitly informed Vanguard to stop calling, yet they continued to call.

41. The Plaintiff then sent Vanguard an e-mails about the calls.

42. Vanguard did not deny the calling conduct or otherwise respond.

43. Other individuals have made similar complaints through the Better Business Bureau:

> I receive many phone calls telling me that the warranty on my car is expiring. I drive a 2013 Scion. The warranty expired long ago.Lately, I have received in my home mail, a postcard, and this week, a letter telling me similar, only this latest letter actually has my vehicle year and model, my full address, and in small print on the bottom, the name Vanguard Vehicle Armor as the company. There are a couple of phone numbers to "please call immediately" as well; ************** and for Spanish speakers, **************.I'm quite sure this is a scam and wondering if this is the company that has been calling with the same scam for years now. I am on the Do Not Mail and Do Not Call list. It's about time these scammers were shut down or made to run their businesses in a legal and legitimate manner.
>
> Company refuses to follow DO NOT CALL REGISTRY. Company refuses to remove phone numbers and profiles from company database…This company should be fined and banned from robo calling.
>
> This company has been harassing me for 6 (SIX!) years. I would like them to STOP CONTACTING ME and would like assistance in getting them to STOP CONTACTING ME.

*See* https://www.bbb.org/us/ca/tustin/profile/auto-warranty-plans/vanguard-vehicle-armor-1126-172016339/complaints (Last Visited July 13, 2023).

44. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. Plaintiff and the Class Members were also harmed by use of their telephone power and network bandwidth and the intrusion on their telephone that occupied it from receiving legitimate communications.

### **INTEGRITY VEHICLE'S LIABILITY FOR THE CALLS AT ISSUE**

45. For twenty-five years the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

46. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."

47. In that ruling, the FCC instructed that sellers such as Integrity may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent'

8

marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

48. The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

49. Vanguard was contractually required to promote Integrity products on their telemarketing calls in order to potentially generate new customers, and did so, as they did with the Plaintiff.

50. Integrity was knowingly and actively accepting the business that originated through the illegal telemarketing calls through the issuance of vehicle service contracts.

51. Integrity derived a benefit from its interaction with the Plaintiff by the issuance of a policy.

52. Moreover, Integrity maintained interim control over Vanguard's actions.

53. For example, Integrity had absolute control over whether, and under what circumstances, it would accept a customer.

54. Furthermore, Integrity had day-to-day control over Vanguard's actions, including the ability to prohibit it from using pre-recorded methodology to contact potential customers of Integrity.

55. Integrity failed to make such an instruction to Vanguard, and as a result, is liable for Vanguard's conduct.

56. Integrity also gave interim instructions to Vanguard by providing the volume of calling and leads it would purchase.

57. Integrity gave further interim instructions to Vanguard by providing the states that those companies were allowed to make calls into and restricting other states that they could not.

58. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## CLASS ACTION ALLEGATIONS

59. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein

60. Plaintiff brings this action on behalf of themselves and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

61. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **Pre-Record Class:** All persons in the United States who, (1) within four years prior to the commencement of this litigation until the class is certified (2) received one or more calls on their cellular telephone (3) from or on behalf of Vanguard that could have promoted Integrity goods or services, (4) sent using the same, or substantially similar, pre-recorded message used to contact the Plaintiff.
>
> **National Do Not Call Registry:** All persons in the United States whose, (1) telephone numbers were on the National Do Not Call Registry for at least 30 days,

10

(2) but received more than one telephone solicitation telemarketing call from or on behalf of the Vanguard (3) within a 12-month period, (4) that could have promoted Integrity services (5) from four years prior the filing of the Complaint.

Excluded from the Classes are counsel, the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

62. The Plaintiff is a member of and will fairly and adequately represent and protect the interests of these Classes as they have interests that conflict with any of the class members

63. Plaintiff and all members of the Classes have been harmed by the acts of the Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their cell phone battery, and the intrusion on their cellular telephone that occupied it from receiving legitimate communications.

64. This Class Action Complaint seeks injunctive relief and money damages.

65. The Classes as defined above are identifiable through dialer records, other phone records, and phone number databases.

66. Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds in each class.

67. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

68. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

69. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

70. There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:

   a. whether a pre-recorded message was used to send calls;

   b. whether multiple telemarketing telephone calls were made promoting the goods or services to members of the National Do Not Call Registry Class;

   c. whether the telemarketing calls at issue were made to Plaintiff and members of the Classes without first obtaining prior express written consent to make the call;

   d. whether Defendants' conduct constitutes a violation of the TCPA; and

   e. whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

71. Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests which are antagonistic to any member of the Classes.

72. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes and have the financial resources to do so.

73. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class

members, which will be ascertainable from records maintained by Defendants and/or their agents.

74. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

**FIRST CAUSE OF ACTION**
**Statutory Violations of the Telephone Consumer Protection Act**
**(47 U.S.C. 227, et seq.) on behalf of the Robocall Classes**

75. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

76. The Defendants violated the TCPA by or causing to be sent via an agent pre-recorded calls to the cellular telephones of Plaintiff and members of the Robocall Class using a pre-recorded message without their prior express written consent.

77. As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Robocall Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

78. The Plaintiff and Robocall Class Members are entitled to an award of treble damages if their actions are found to have been knowing or willful.

79. Plaintiff and Robocall Class members are also entitled to and do seek injunctive relief prohibiting Integrity's vendors using a pre-recorded voice in the future, except for emergency purposes.

## SECOND CAUSE OF ACTION
### Violation of the Telephone Consumer Protection Act
### (47 U.S.C. 227, et seq. and 47 C.F.R. §§ 64.1200(d))
### on behalf of the National Do Not Call Registry Classes

80. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

81. The Defendants violated the TCPA and the Regulations by its agent make two or more telemarketing calls within a 12-month period to Plaintiff and the members of the National Do Not Call Registry Class while those persons' phone numbers were registered on the National Do Not Call Registry.

82. As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and National Do Not Call Registry Class members are entitled to an award of up to $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(c)(5).

83. Plaintiff and Class Members are entitled to an award of treble damages if their actions are found to have been knowing or willful.

84. Plaintiff and National Do Not Call Registry Class members are also entitled to and do seek injunctive relief prohibiting Integrity's vendors from advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry in the future.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.      Injunctive relief prohibiting Integrity's vendors from calling telephone numbers advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry or to any cellular telephone numbers using a prerecorded voice in the future;

B.      As a result of Defendant's violations of the TCPA, Plaintiff seeks for himself and each member of up to treble damages, as provided by statute, of $1,500 for each and every violation of the TCPA;

C.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

D.      Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

PLAINTIFF,
By his attorneys

*/s/ Jeremy C. Jackson*
Jeremy C. Jackson (PA Bar No. 321557)
BOWER LAW ASSOCIATES, PLLC
403 S. Allen St., Suite 210
State College, PA 16801
Tel.: 814-234-2626
jjackson@bower-law.com

        Anthony I. Paronich (*subject to pro hac vice*)
        Paronich Law, P.C.
        350 Lincoln Street, Suite 2400
        Hingham, MA 02043
        (508) 221-1510
        anthony@paronichlaw.com