IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZACH FRIDLINE, on behalf of himself and others similarly situated, | No. 4:23-CV-01194 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| INTEGRITY VEHICLE GROUP, INC. and NATCAP, INC. d/b/a VANGUARD VEHICLE ARMOR, | |
| Defendants. | |

**MEMORANDUM OPINION**

**OCTOBER 31, 2023**

## I.   BACKGROUND

In September 2023, Plaintiff Zachary Fridline filed a two-count amended complaint against Defendants, Natcap, Inc., doing business as Vanguard Vehicle Armor ("Vanguard"), and Integrity Vehicle Group, Inc. ("Integrity").

On September 18, 2023, Integrity filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[1] The motion is now ripe for disposition; for the reasons that follow, it is denied.

---

[1]   Doc. 19.

## II. DISCUSSION

### A. Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[2] and *Ashcroft v. Iqbal*,[3] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[4] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[5]

### B. Facts Alleged in the Amended Complaint

The facts alleged in the amended complaint, which this Court must accept as true for the purposes of this motion, are as follows.

---

[2] 550 U.S. 544 (2007).
[3] 556 U.S. 662 (2009).
[4] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[5] *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

2

To fend off unwelcome telemarketers, Zachary Fridline registered his cellphone number on the National Do Not Call Registry on September 12, 2005.[6] This did not spare him. To Fridline's dismay, he received a marketing call from Vanguard, soliciting Integrity's automobile warranty services, in September 2021.[7] Fridline wrote a letter to Vanguard, requesting it to cease calling him.[8] Vanguard continued calling him: in December 2022, on March 30, 2023, on May 8, 2023, and on May 10, 2023.[9] On two of these occasions, Vanguard mailed a copy of Integrity's automobile warranty contract to Fridline's personal residence.[10] Vanguard's calls on March 30, 2023 and May 10, 2023, also began with an automated message, stating: "please hold while we connect your call."[11] Each time, Vanguard solicited Integrity's automobile warranty services.[12] Each time, Fridline told Vanguard to stop.[13] Each time, Vanguard did not listen.[14] Fridline sent Vanguard more emails, to no avail.[15] And Fridline discovered that others had made similar complaints about these calls

---

[6] Doc. 17 ¶28.
[7] Id. ¶35.
[8] Id. ¶41.
[9] Id. ¶¶30, 35.
[10] Id. ¶¶39-40; Doc. 17-1 ("Congratulations! We would like to thank You for choosing Our Service Contract").
[11] Doc. 17 ¶¶30-31.
[12] Id. ¶¶36-37.
[13] Id. ¶43.
[14] Id.
[15] Id. ¶¶44-45.

to the Better Business Bureau.[16] So, he filed the class action lawsuit which comes before this Court today.[17]

Fridline's claims against Integrity, the Moving Defendant, hinge upon Integrity's relationship with Vanguard. According to Fridline, Vanguard and Integrity have entered into a contract requiring Vanguard to promote Integrity products on their telemarketing calls to generate new customers.[18] Integrity then accepted business originating through Vanguard's telemarketing calls.[19] Fridline alleges Integrity's "day-to-day control over Vanguard's actions."[20] He also alleges that Integrity "maintained interim control over Vanguard's actions" because Integrity "had absolute control over whether, and under what circumstances, it would accept a customer;" gave "interim instructions" "by providing the volume of calling and leads it would purchase;" and gave "interim instructions" by "providing the states that those companies were allowed to make calls into and restricting other states that they could not."[21]

Arguing that Vanguard's conduct violates the Telephone Consumer Protection Act ("TCPA")'s prohibitions on automated calls and calls to members of the National Do Not Call Registry, Fridline now pleads two causes of action against

---

[16] *Id.* ¶46.
[17] *Id.* ¶47.
[18] *Id.* ¶52.
[19] *Id.* ¶53.
[20] *Id.* ¶57.
[21] *Id.* ¶¶55-56, 59-60.

Vanguard.[22] Based on Integrity's vicarious liability for Vanguard's conduct, Fridline also brings suit against Integrity on these same bases.[23] Integrity filed this motion to dismiss opposing its vicarious liability for Vanguard's actions.[24]

### C. Analysis

The Telephone Consumer Protection Act of 1991 was motivated by the invasion of privacy caused by abusive telemarketing practices.[25] It places two relevant restrictions on such calls. First, the TCPA makes it unlawful "to make any call . . . using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service."[26] Second, the TCPA provides for a "consumer-driven process" to limiting telemarketing calls.[27] If a person placed his name on the national Do-Not-Call registry, any telephone solicitation to that person is an "abusive telemarketing act."[28] Where either violation occurs, private citizens may bring suit against the violating companies for monetary or injunctive relief.[29] Bringing suit for calls in violation of

---

[22] *Id.* at 13-14.
[23] *Id.*
[24] Doc. 19.
[25] *Barr v. Am. Ass'n of Political Consultants*, 140 S.Ct. 2335, 2343 (2020); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).
[26] 47 U.S.C. § 227(b)(1)(A)(iii).
[27] *Krakauer v. DISH Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019)
[28] 47 C.F.R. §§ 64.1200(c)(2), (d).
[29] 47 U.S.C. §§ 227(b)(3), (C)(5).

the national Do-Not-Call registry also requires that at least two such calls be made within a twelve-month period.[30]

Fridline sues Defendants Vanguard and Integrity under both causes of action. To state a cause of action under the TCPA, a plaintiff must allege that "(1) a call was made; (2) the recipient did not give express consent to receive the call; (3) the caller" either "used an [Automated Telephone Dialing System];" or placed more than two calls to a member of the National Do Not Call Registry within a twelve-month period; "and (4) the number called is assigned to a cellular telephone service."[31] In its motion to dismiss, Integrity presents no challenge to the merits of Fridline's TCPA claims themselves. Rather, Integrity disputes the first element, that it made a call to Fridline. Fridline responds that an agency relationship existed between Vanguard and Integrity, and thus, Integrity is liable for the TCPA violations resulting from Vanguard's call.

"[T]he Federal Communications Commission has ruled that, under federal common-law principles of agency, there is vicarious liability for TCPA violations."[32] "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act

---

[30] 47 U.S.C. § 227(c)(5).
[31] *Kline v. Elite Med. Labs, Inc.*, 2019 U.S. Dist. LEXIS 214802, at *11-12 (M.D. Pa. Dec. 13, 2019); 47 U.S.C. § 227(b)(1)(A)(iii), 227(b)(3), 227(C)(5).
[32] *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016) (citing *In re Joint Petition Filed by DISH Network, LLC*, 28 FCC Rcd. 6574 (F.C.C. 2013)).

on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act."[33] An agency relationship can be established through actual authority, apparent authority, or ratification.[34] The parties dispute the applicability of all three theories of agency liability. But because Fridline plausibly alleges that Vanguard had actual authority to act on Integrity's behalf, the Court need not examine the other bases for liability here.[35]

"Actual authority is that authority which a principal expressly or implicitly grants to an agent."[36] "Actual authority 'to do an act can be created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account."[37] "[T]he alleged facts must indicate that the principal has control over the agent's acts."[38] While some of Fridline's allegations are indeed conclusory,[39] his remaining allegations are sufficient to survive dismissal.

---

[33] Restatement (Third) Agency § 1.01 (Am. Law Inst. 2006).
[34] *Cunningham v. Capital Advance Sols., LLC*, No. 17-13050, 2018 U.S. Dist. LEXIS 197590, at *16-17 (M.D. Pa. Nov 20, 2018).
[35] Fed. R. Civ. P. 8(d).
[36] *Jurimex v. Kommerz Transit G.M.B.H. v. Case Corp.*, No. 06-3523, 2007 U.S. App. LEXIS 18113, at *5-6 (3d Cir. July 27, 2007) (unpublished) (quoting *Billips v. Mangess Constr. Co.*, 391 A.2d 196, 197 (Del. 1978)).
[37] *Id.* (quoting Restatement (Second) Agency § 26 (Am. Law Inst. 1958); Restatement (Third) Agency § 3.01 (Am. Law Inst. 2006)).
[38] *Warciak v. Subway Rests., Inc.*, No. 1:16-cv-08694, 2019 U.S. Dist. LEXIS 32357, at *7-8 (N.D. Ill. Feb. 28, 2019), *aff'd*, 949 F.3d 354 (7th Cir. 2020).
[39] The allegation of "day to day control" is clearly conclusory because it does not specify what control Integrity had and how it was exercised. The allegations that Integrity provided the volume of calling and leads it would purchase, and in what states, plead that a contract for services existed, but are not in themselves "interim instructions." The allegation that "interim instructions" were given then lacks factual support, and is also conclusory.

Fridline has plausibly alleged that a contractual relationship existed between Vanguard and Integrity, for which Integrity specified the volume of calling and leads and the states to which the calls were made. He has alleged that Vanguard called him to solicit Integrity's auto insurance five times, and mailed him a contract on Integrity's behalf twice. These facts make it reasonable to infer that a telemarketing contract existed between the parties. While Fridline "does not allege the specifics of any contractual relationship between [Netcap] and [Integrity] . . . requiring h[im] to do so prior to discovery would be unreasonable."[40]

"While an agency relationship can be created by contract, not all contractual relationships form an agency."[41] But the United States Court of Appeals for the Third Circuit has not yet commented upon any aspect of vicarious liability under the TCPA. As such, the parties point this Court to conflicting authority regarding what is required to plausibly allege agency liability in this TCPA context.[42] This case law can be synthesized into two general approaches. One line of cases generally finds that a telemarketing contract for one company to call and solicit potential customers on another company's behalf plausibly alleges an agency relationship sufficient to survive dismissal; more evidence of control is, of course, required later in the

---

[40] *Metten v. Town Sports Int'l, LLC*, No. 18-CV-4226 (ALC), 2019 U.S. Dist. LEXIS 47138, at *9 (S.D.N.Y. Mar. 21, 2019).
[41] *Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 356-57 (7th Cir. 2020).
[42] The split of authority pertains only to what makes a plausible allegation of agency sufficient to survive dismissal.

litigation.[43] This was the approach taken by my late colleague, the Honorable James M. Munley, in *Hartley-Culp v. Green Tree Servicing, L.L.C.*[44]

Yet other courts have applied a harsher standard. These decisions find that alleging a contractual telemarketing relationship, without more, implausibly alleges the control over calls necessary to demonstrate agency.[45] They therefore require additional pleadings making specific allegations as to the control exercised by the defendant over the telemarketing company with whom it contracted. Thus, where a plaintiff has been called by a telemarketer and transferred to a defendant's line, for example, courts taking the former approach have found that these facts plausibly allege an agency relationship; courts taking the latter approach have found an agency

---

[43] *Hartle-Culp v. Green Tree Servicing, L.L.C.*, 52 F.Supp. 3d 700 (M.D. Pa. 2014); *McCabe v. Caribbean Cruise Line, Inc.*, No. 13-CV-6131, 2014 U.S. Dist. LEXIS 91116 (E.D.N.Y. July 3, 2014); *Metten*, 2019 U.S. Dist. LEXIS 47138; *Kline v. United Northern Mortg. Bankers Ltd.*, No. 4:18-CV-00489, 2018 U.S. Dist. LEXIS 157816, at *3-4 (M.D. Pa. Sept. 17, 2018); *Wagner v. CLC Resorts & Devs., Inc.*, 32 F.Supp. 3d 1193, 1195 (M.D. Fla 2014); *Spillman v. Dominos Pizza, L.L.C.*, No. 10-349-BAJ-SCR, 2011 U.S. Dist. LEXIS 17177, at *10-11 (M.D. La. Feb. 22, 2011); *Dolemba v. Ill. Farmers Ins. Co.*, 213 F.Supp. 3d 988, 997 (N.D. Ill. 2016); *Fitzhenry v. Career Educ. Corp.*, No. 14-cv-10172, 2016 U.S. Dist. LEXIS 26244 (N.D. Ill. Mar. 1, 2016); *United States v. DISH Network LLC*, 256 F.Supp. 3d 810, 923 (C.D. Ill. 2017).

[44] 52 F.Supp. 3d 700 (M.D. Pa. 2014).

[45] *Meeks v. Buffalo Wild Wings, Inc.*, 2018 U.S. Dist. LEXIS 52328, at *6 (N.D. Cal. 2018) (granting motion to dismiss because plaintiff failed to allege that defendant exhibited control over "whether, when, and to whom to send the text messages, along with their content."); *Jackson v. Caribbean Cruise Line, Inc.*, 88 F.Supp. 3d 129, 138 (E.D.N.Y. 2015); *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, 2018 WL 2888055 (N.D. Cal. 2018) ("To state a plausible claim based on actual authority, plaintiff must allege facts showing that defendant had the right to control the representatives and the manner and the means of the calls they made"); *Banks v. Pro Custom Solar*, 416 F.Supp. 3d 171, n.2 (E.D.N.Y. 2018); *Childress v. Liberty Mutual Ins. Co.*, No. 17-cv-1051, 2018 U.S. Dist. LEXIS 167281 (D.N.M. Sept. 28, 2018); *Linlor v. Five9*, 2017 U.S. Dist. LEXIS 196266 (S.D. Cal. Nov. 29, 2017); *Reo v. Caribbean Cruise Line, Inc.*, No. 1:14 CV 1374, 2016 U.S. Dist. LEXIS 35596, (N.D. Ohio Mar. 18, 2016).

relationship to remain implausible without additional allegations of control over the means by which the initial call was made.[46]

In this specific context, the Court is not persuaded that it must apply a harsher plausibility standard. The Eastern District of New York's decision in *Jackson v. Caribbean Cruise Line, Inc.*, sets out the usual rationale for requiring such additional allegations.[47] *Jackson* based its reasoning on language from the Third Restatement of Agency:

> The power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents . . . Performing a duty created by contract may well benefit the other party but the performance is that of an agent only if the elements of agency are present.[48]

From this language, the *Jackson* court concluded that interim instructions are the "hallmark" of an agency relationship.[49] It therefore dismissed a complaint alleging a contract between a telemarketing company and the defendant in which the defendant imposed "certain constraints" on the telemarketer, because the complaint

---

[46] *Compare Kline*, 2018 U.S. Dist. LEXIS 157816, at *3-4 (vicarious liability was plausible because plaintiff alleged that "after answering the unsolicited call, he was eventually connected to a self-identified [] agent [of defendant], a fact that allows this Court to infer that whoever made the call was acting in some capacity on [defendant]'s behalf") *with Childress* 2018 U.S. Dist. LEXIS 167281, at *10 (dismissing claim based on agency as implausible where telemarketer transferred call to defendant because "[t]he transfer of the call . . . does not establish that Defendant exerted control over the initiator of the call, supervised or controlled the initial call, or maintained any sort of relationship with the initiator of the call").

[47] *Jackson*, 88 F.Supp 3d. at 139.

[48] Restatement (Third) Agency § 1.01 cmt. F(1), cmt. G (Am. Law Inst. 2006).

[49] *Jackson*, 88 F.Supp. 3d at 138.

did not further allege that the defendant exercised control over the means by which calls were made.[50]

I believe that *Jackson* is generally correct that a contract does not necessarily create an agency relationship as a matter of law—but it can, depending on the degree of control expressed through the contract terms.[51] The Second Restatement of Agency indicates that agency is lacking where the person "contracts to accomplish something for another or to deliver something to another;" he has "contracted to accomplish physical results not under the supervision of the one who has employed them to produce the results."[52] In contrast, "[o]ne who contracts to act on behalf of another and subject to the other's control except with respect to his physical conduct is an agent and also an independent contractor."[53]

The Third Restatement simply states that the *power* to give interim instructions distinguishes contractual relationships in which an agency relationship is also present, and those in which it is not.[54] Failing to plead that interim instructions were actually issued regarding the manner and means by which a company places

---

[50] *Id.* at 138-39.
[51] *See* Restatement (Second) Agency § 14N & cmts. (a)-(b) (Am. Law Inst. 1956); *Warciak*, 949 F.3d at 356-57.
[52] *Id.* § 14N cmt. (b).
[53] *Id.* § 14N.
[54] Restatement (Third) Agency § 1.01 cmt. F(1) (Am. Law Inst. 1956). It should also be noted that the rationale behind agency liability is the assumption that Congress legislates against a backdrop of common law, and will not displace those concepts absent explicit language. *Meyer v. Holley*, 537 U.S. 280, 285 (2003). When Congress passed the TCPA in 1991, the most recent Restatement was the Second Restatement of Agency. The more instructive restatement would then be the Second restatement of Agency, not the third, which was published in 2006.

calls on another company's behalf therefore does not render an agency allegation implausible as a matter of law. The distinction is between exercising the power of control and actually having it. An agency relationship exists in either case, so alleging the exercise of control is neither a "required element," nor a plausibility requirement.[55]

The point is that additional allegations demonstrating an exercise of control, through interim instructions or otherwise, might be necessary in some cases to render an agency allegation plausible, but they are not a required element or "hallmark" of agency whose absence in the pleadings mandates dismissal as a matter of law. It need only be plausible from the face of the complaint that the proposed agent could have issued such interim instructions because it had the "power" to do so. "A principal's control over an agent will as a practical matter be incomplete because no agent is an automaton who mindlessly but perfectly executes commands."[56] The control exercised by a principal need not "include control at every moment; its exercise may be very attenuated and, as where the principal is physically absent,

---

[55] Of course, absent "interim instructions," the defendant company's control would still have to be proved in some other way. For example, a company could provide scripts to be used in its telemarketing calls, the contract could provide that the defendant company has the right to issue such instructions, or the communications of the parties could demonstrate their understanding of this power. *See, e.g.*, *Hossfeld v. Gov't Emples. Ins. Co.*, 88 F.Supp. 3d 504 (D. Md. 2015) (where telemarketer called defendant and transferred that call to GEICO, GEICO was vicariously liable because it contracted with the telemarketers and provided a script); *In re DISH Network*, 28 F.C.C. Rcd. at 6592 (setting out evidence tending to prove apparent authority).

[56] Restatement (Third) Agency § 1.01 cmt. f (Am. Law Ins. 2006).

may be ineffective."[57] "The existence and scope" of this power of control is generally a "factual matter, and therefore often appropriately left to the jury."[58]

Where a contractual relationship has been alleged, what additional allegations are needed to plausibly allege such control, and therefore agency, will depend on the type of contract and other surrounding circumstances. In line with the decisions cited above,[59] such an inference of control is at its most plausible from the bare fact of a contractual relationship where the contract is specifically for telemarketing services. It will often follow from the fact of contracting for telemarketing services that the contractor has the right to issue additional instructions—for example, to instruct the telemarketer that it is not to call persons registered on the "do not call" list, or to issue a script. In contrast, where the complaint alleges a different kind of contractual relationship or the nature of the relationship is too unclear to determine why one company mentions another in its solicitations, additional allegations would be needed to plausibly allege that the defendant had the power to control the manner and means of those solicitations.[60]

---

[57] Restatement (Second) Agency § 14 cmt. a (Am. Law Inst. 1956).
[58] *Krakauer v. DISH Network, L.L.C.*, 925 F.3d 643, 660 (4th Cir. 2019) (quoting *Metco Prods., Inc., Div. of Case Mfg. Co. v. NLRB*, 884 F.2d 156, 159 (4th Cir. 1989)).
[59] *E.g.*, *McCabe v. Caribbean Cruise Line, Inc.*, No. 13-CV-6131, 2014 U.S. Dist. LEXIS 91116 (E.D.N.Y. July 3, 2014).
[60] *See, e.g.*, *Warciak v. Subway Rests., Inc.*, No. 1:16-cv-08694, 2019 U.S. Dist. LEXIS 32357, at *7-8 (N.D. Ill. Feb. 28, 2019), *aff'd*, 949 F.3d 354 (7th Cir. 2020); *Escano v. Concord Auto Protect, Inc.*, No. 22-2096, 2023 U.S. App. LEXIS 16441, at *10-*11 (10th Cir. June 29, 2023); *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-cv-02440, 2015 U.S. Dist. LEXIS 160349, at *17-18 (S.D.N.Y. Nov. 30, 2015).

Under these circumstances, where plaintiff has alleged that a telemarketing contract existed requiring Vanguard to solicit on Integrity's behalf, it is plausible that Integrity had the power to direct the manner by which Vanguard fulfilled these telemarketing services. Additionally, "apparent authority may be supported by evidence that the seller allows the outside sales entity access to information . . . that would normally be within the seller's exclusive control."[61] Vanguard's conduct in sending Integrity's contract to Fridline therefore also supports the plausibility of Integrity's control. Based on the available facts, it is unlikely that Integrity gave no additional instructions to a telemarketer which also appeared willing to mail out and execute contracts on Integrity's behalf.

This assumption of the contracting party's powers is, of course, an inference. But such reasonable inferences must be construed in favor of the non-moving party at the dismissal stage.[62] And "a plaintiff is not required to plead all of its evidence in the complaint in order to plausibly allege agency."[63] He must only "allege a factual basis that gives rise to an inference of an agency relationship through the use of generalized as opposed to evidentiary facts."[64] "[I]t is likely that all of the documents and information that establish (or refute) the details of the agency relationship

---

[61] *In re DISH Network*, 28 F.C.C. Rcd. at 6592.
[62] *S.H. v. Lower Merion Sch. Dist.*, 729 F.3d 248, 256 (3d Cir. 2013) (citing *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 452 (3d Cir. 2006)).
[63] *Dolemba v. Ill. Farmers Ins. Co.*, 213 F.Supp. 3d 988, 997 (N.D. Ill. 2016) (citing *In re DISH Network*, 28 F.C.C. Rcd. at 6584).
[64] *Mauer v. Am. Intercontinental Univ., Inc.*, No. 16 C 1473, 2016 U.S. Dist. LEXIS 120451, at *2 (N.D. Ill. Sep. 7, 2016) (citing *In re DISH Network*, 28 F.C.C. Rcd. at 6593 n.139).

between [the parties] are exclusively within the Defendants' custody and control."[65] "The question of whether implied authority may have existed would require the Court to know more about the course of the parties' dealings and generally expected course of business in th[is]" "field of marketing. Such questions of fact would be inappropriate for resolution on a motion to dismiss."[66] "[W]ithout any discovery it is impossible for [plaintiff] to know the nature of an alleged relationship between [the telemarketer and defendant] . . . But [his] claim at least points to an apparent relationship."[67]

Despite the multitude of cases cited in Integrity's briefings, it comes down to this: Fridline plausibly alleges that Integrity contracted with Vanguard to call potential customers on its behalf. He received a call from Vanguard soliciting Integrity's Services, and he received mail from Vanguard containing Integrity's contract. On a motion to dismiss, that is enough. If discovery reveals that Integrity had no such power under its contract with Vanguard, then judgment may be entered in favor of Integrity at that time.

---

[65] *Dolemba*, 213 F.Supp. 3d at 997.
[66] *Cunningham v. Rapid Response Monitoring Servs.*, 251 F.Supp. 3d 1187, 1199 (M.D. Tenn. 2017).
[67] *Hodgin v. Parker Waichman LLP*, No. 3:14-cv-733-DJH, 2015 U.S. Dist. LEXIS 192262, at *5-6 (W.D. Ky. Sept. 30, 2015).

## III.  CONCLUSION

Defendant[s]' motion to dismiss pursuant to Rule 12(b)(6) is denied.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge
